NEW ORLEANS ICE CO. v. O'MALLEY.

(Circuit Court of Appeals, Fifth Circuit. February 21, 1899.)

No. 728.

ACTION BY SERVANT—PERSONAL INJURIES—QUESTION FOR JURY.

In an action by a servant against the master to recover for personal injuries alleged to have been sustained by reason of defective appliances furnished by the defendant, where the evidence showed that the appliances were not reasonably safe, and was conflicting as to whether the plaintiff was guilty of contributory negligence, and as to whether the injury was due to the negligence of a fellow servant, as well as to the facts from which it must be determined whether plaintiff knew, or should have known, that the appliances were unsafe, the case was properly submitted to the jury.

Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This was an action by Martin O'Malley against the New Orleans Ice Company to recover for personal injuries. There was judgment for plaintiff on the verdict of a jury, and defendant brings error.

Chas. S. Rice, for plaintiff in error.
Thos. M. Gill, for defendant in error.

Before PARDEE, Circuit Judge, and BOARMAN and SWAYNE, District Judges.

PARDEE, Circuit Judge. The plaintiff in error states his case as follows:.

"Martin O'Malley claims that while in the employ of the New Orleans Ice Company, on say July 6, 1894, a piece of scantling, six or eight feet long and four inches in width and thickness, with tackle attached, fell from forty feet or more above him upon the back of his head and neck; his skull thereby being broken, and his spine seriously injured, his hearing and sight impaired, etc. He alleges that he never worked above among the appliances which fell, never saw them, and knew nothing of them; the fog or mist rising from the ice and their distance preventing him from seeing them or their operation. That the beams on which the appliances rested were narrow, wet, and slippery, rendering it dangerous to the person upon them adjusting the appliances, and to the workmen below. That there was no floor on the beams where the appliances rested for the security of the person adjusting the appliances or the workmen below. That for want of such floor or planks, 'on which he could have safely walked,' one John Smith, on July 6, 1894, had to walk on the narrow and slippery beams, and, having slipped and lost his foothold, to save his own life dropped the scantling, which, falling on plaintiff, caused the injury complained of. That he was obeying defendant's orders at the time. Did not know, and had no reason to know, that he was in danger; while defendant knew, or should have known, that the appliances and the manner of using them were. dangerous, and exposed plaintiff to the greatest risk and danger.

"The answer of the ice company, among other things, avers the common employment of O'Malley, with John Smith and others, in cutting out and removing ice from its factory. That in cutting and removing ice respondent furnished a perfectly safe, sound, and strong tackle of ropes and pulleys, suspended, for greater security, from two scantlings, placed across large and strong beams running overhead from one side of the freezing room to the other: and that, as the ice was cut away from under, it was necessary to shift the tackle along the beams closer to the uncut ice. That the tackle had thus to be shifted many times every day, to the knowledge of the plaintiff. That the labor of and the method of removal was entirely in the hands of the particular gang of workmen; that it was done by hand, as the plaintiff knew; that it was the best method known to the respondent, and had been long in use in the factory, before the accident in question. The answer admits danger inherent in the work, but avers that it is a danger open and apparent at once to any one of the age and capacity of plaintiff, exercising ordinary care. It denies that the plaintiff was required to work and expose himself while the appliances were being shifted; that this practice was well known to and acted upon by the gang to which the plaintiff was attached. It avers contributory negligence on the part of plaintiff in voluntarily and knowingly and carelessly exposing himself, and 'remaining under said tackle and appliances while the same were being shifted, and that he did so without the orders, knowledge, or fault of respondent'; that it was the duty of plaintiff, knowing, as he did, that the tackle was being shifted, to have moved out of the way of possible danger, as he easily could have done; and that by doing so he would have avoided the accident, which befell him solely because of his imprudence and culpable negligence, and without fault of respondent.

"At the first trial by jury in December, 1896, in the circuit court, there was a verdict for plaintiff for $3,000. A new trial was granted on rule by the defendant. In February, 1898, the cause was tried again, before a jury, and there was verdict for $750 in favor of plaintiff.

"After the evidence had been closed, defendant's counsel, in presence of the jury, requested the court to direct a verdict for the defendant, and for reasons assigned in writing:

"'(1) That plaintiff, on whom the burden of proof rests, has not established any culpable fault on the part of the defendant, whereby the plaintiff was injured. (2) The testimony shows without dispute that the accident in question occurred about 11 o'clock in the morning of July 6, 1894, and that from say 9 o'clock in the morning of every day before and thereafter, including the day and time of said accident, the view of the upper works and the

implements operated by defendant, by which the plaintiff was injured, were plainly apparent and observable, as well as the person operating the same, by the plaintiff. (3) That the testimony showed, without dispute, that the character and condition of the implements used by the defendant in the operation of his factory, and by which the plaintiff was injured, were in plain view, and their character and condition, and their defects, if any, and their manner and method of operation, were plainly visible to any person, including the plaintiff, from the position where the plaintiff was usually occupied, and was occupied at the time of the injury in question. (4) That the testimony shows that the plaintiff could have known, by the use of ordinary judgment and his sense of sight, the character and condition and the method of operating the appliances in use by the defendant, and through the use of which the plaintiff was injured. (5) That the undisputed testimony shows that the plaintiff had every means in his power of knowing and of gaining knowledge as to the character and condition of, and the dangers to be reasonably apprehended from, the appliances aforesaid, as fully as those possessed by the defendant. (6) That the undisputed testimony shows that the appliances used by the defendant were good, sufficient, and reasonably safe, and of such character and in such condition as the defendant had the right to use without further intervening fault on his part in the premises, in the work in which the plaintiff was employed. (7) That the testimony shows that the defendant, by means of suitable flooring and boards to stand upon, while the person engaged in removing the scantling and adjusting the fall and tackle over the position where the workmen had been employed below, had provided means by which said work, with ordinary care and precaution on the part of the person so moving and adjusting the same, could be removed in safety, not only to the person performing the labor, but to those below. (8) That the undisputed testimony shows that the accident in question was caused either by an accident to, or by neglect or want of proper precaution on the part of, one Smith, a fellow servant of plaintiff, in the performance of his duties, while removing the scantling and adjusting the tackle aforesaid. (9) That the testimony establishes that the plaintiff did, by contributory negligence on his part, place himself in a position where he knew, or ought to have known, and was bound to know, the danger to him during the removal of the scantling and adjusting of the tackle above his head, because of which facts, in law, there can be no recovery for damages against the defendant. (10) That the testimony shows that the plaintiff voluntarily entered into the place or position where he was injured, without legal obligation or necessity on his part, or act on the part of defendant amounting to coercion; and that, in law, plaintiff is bound to be held to have voluntarily entered into said position, and to have taken the risks involved in such entry. (11) The undisputed testimony shows that the plaintiff sought the employment in which he was injured, thereby impliedly representing that he was competent to perform its duties, and to apprehend and avoid all dangers that might be discovered by the exercise of ordinary care and prudence."

"The court refused the application, to which refusal the defendant reserved its bill of exceptions, and subsequently presented such bill, with the testimony taken on the trial as part thereof, which bill was signed by the judge and filed. An application for a new trial was refused. The error assigned is that the 'trial court erred in refusing the motion made by defendant in open court, and on the trial of said cause, and at the conclusion of the testimony adduced and offered herein by both plaintiff and defendant, requesting the court to direct a verdict for the defendant, and refusing the said motion and request made in writing, as fully shown by the reasons and statements contained in the bill of exceptions and the testimony and evidence aforesaid, to be annexed thereto and made part thereof, as if repeated and copied therein, in full, filed and to be filed within the delay allowed by order of said court.' "

A study of the 363 printed pages of evidence found in the record as a part of the bill of exceptions satisfies us of the following propositions: That the evidence was conflicting as to whether O'Malley

contributed by his negligence to his own injury; that it is also con-flicting as to whether O'Malley was injured through the negligence of a fellow servant; that the appliances in use in the ice factory, by which O'Malley was injured, were not reasonably safe; that O'Malley was not directly informed nor instructed as to the dangerous and unsafe appliances to be used over his head, and in connection with the work which he was to perform; that whether he knew, by the circumstances and his observation, or ought to have known, that the appliances were unsafe, and therefore assumed the risk thereof by accepting his employment, was a question to be determined wholly by proper and legitimate inferences to be drawn from a number of facts as to which the evidence was conflicting. In our opinion, the case was one eminently proper to be submitted to a jury, and it would have been error for the trial judge to have charged the jury to find for the defendant for any one of the reasons assigned. The judgment of the circuit court is affirmed.